In re DISPOSITION OF CERTAIN INTOXICATING LIQUORS.

(District Court, W. D. Pennsylvania. March 18, 1921.)

No. 4892.

Intoxicating liquors ⊜251—Evidence held insufficient to sustain claim to seized liquors.

Evidence *held* insufficient to sustain claim that liquors seized by the government in shipment were the property of claimant, and had been stolen from him and reshipped when seized.

In the matter of the disposition of certain intoxicating liquors. On petition of the United States Attorney and answer claiming ownership by Julius B. Press. Order denying return of liquor to claimant and directing sale thereof by the marshal.

The United States Attorney, pro se.

ORR, District Judge. On the 23d of December, 1920, the United States Attorney presented a petition for the disposition of intoxicating liquors under section 27, title 2, of the National Prohibition Act. 41 Stat. 305. The subject-matter of the petition was a large quantity of whisky, which had been seized by the prohibition officers on a railroad siding at Glenshaw, in the county of Allegheny, within this district, and not far from the city of Pittsburgh. The petition discloses that the said car was shipped from Atlantic City, N. J., in the name of James Baker, and consigned to Philip Logomaresia of Pittsburgh; that said seizure was made on the 8th of November, 1920; that no such person as the consignee had been found, and that no person acting for the consignee or otherwise had claimed the whisky; that on November 9, 1920, by order of this court, the said whisky had been turned over to the marshal of this district, who had placed it in a storage warehouse, thus incurring expense of drayage, watchman, storage, etc.

On the presentation of said petition, which was duly verified by the affidavit of the marshal, this court granted a rule to show cause why the said whisky should not be offered for sale under the provisions of the National Prohibition Act, and directed that notice of the rule should be served on the said James Baker and Philip Logomaresia, wherever found, and that, if personal service could not be made, then notice of the rule should be published for an appropriate time in a newspaper published at Atlantic City, N. J., and in the city of Pittsburgh, and that the rule should also be served upon the carrier.

The proofs of publication of the notice of the rule show that the first publication of the notice in the Atlantic City Gazette-Review was on January 1, 1921, and that the first publication in the Pittsburgh Post was on December 31, 1920. On the date last mentioned, Julius B. Press, of Atlantic City, by his attorney having an office at said place, presented his petition to this court, briefly averring that the said whisky was his, and had been stolen from him on or about the 7th day of November, 1920, and praying to be admitted as an intervening respondent, with leave to file an answer. On the same day this court

made an order that the said Julius B. Press be admitted as an intervening respondent, with leave to file an answer to the petition of the United States Attorney. On the same day, the said Press presented his petition, and procured an order of this court thereon for the taking of the depositions of two employees of the American Railway Express Company at Atlantic City.

Upon January 4, 1921, the said Julius B. Press filed his answer to the petition of the United States Attorney for this district, in which he sets forth his claim of title to the said whisky and avers with more detail, his story of how the whisky was stolen from him. In the second paragraph of his answer, he makes this statement:

"That he does not know either the said Baker or the said Logomaresia."

After averring that he is the holder of a lawful permit to sell intoxicating liquors to others and the proper authorization for the withdrawal of 1,000 cases of whisky from a distilling company at Troy, Ohio, and the shipment by said company to the respondent, he proceeds:

"(3) That respondent received at Atlantic City, N. J., on November 6, 1920, an express car containing 1,000 cases of whisky from the Hayner Distilling Company, for which respondent paid the express charges and concerning which respondent instructed his confidential clerk, one Roy Zeigler, to unload and place in respondent's warehouse at Atlantic City, N. J.

"(4) That respondent then proceeded to Newark, N. J., on other business; that upon his return on November 9, he learned that said Zeigler had never unloaded said car, but on the following day, to wit, November 7, 1920, had called upon the agents of the Express Company in Atlantic City, N. J., in company with one James Baker, who is entirely unknown to respondent, and had presented their government papers, under the law, directing a shipment of 1,000 cases of whisky from Baker to one Logomaresia, of Pittsburgh, Pa., that respondent immediately endeavored to locate his property, and found that it had previously been seized by United States government officers at a place called Glenshaw, Pa., which respondent is informed is somewhere near Pittsburgh, Pa.

"(5) That the whisky concerning which the petition of the United States District Attorney for the Western district of Pennsylvania, has been filed are the goods of respondent and were stolen from respondent either by Zeigler or Baker or Logomaresia, or by a conspiracy between two or all of them."

I am constrained to hold that the said Julius B. Press has not sustained his claim in this case. On the witness stand he detailed a story of which many parts are corroborated, but which in the material parts lacks corroboration, where corroboration could be supplied by him. His positive statement in his answer that he does not know "the said Logomaresia" is consistent with his statements in letters written to prohibition agents about the said whisky, but it is not a full statement with respect to Philip Logomaresia so far as the respondent had dealings with one who went by that name. The very first sale made by the respondent after engaging in business in the summer of 1920, according to his books, was to Philip Logomaresia, and it was a sale of no small quantity. One week later he made another sale to a person by the same name, and the place of business of the said Logomaresia, as it appears upon respondent's books with reference to above sales, was 1154 Main street, Reading, Pa. The respondent on the witness

stand admitted that he had never, at any time, gone to Reading in search of Philip Logomaresia. He further admitted that he did not come to Pittsburgh in search of Philip Logomaresia, and did nothing with respect to the recovery of the whisky in and about Pittsburgh, except to call one Martin Burk by telephone to ascertain whether the whisky seized at Glenshaw was Hayner whisky. He stated on the stand that Roy Zeigler, who he thought was his confidential clerk, had informed him, when first employed at Atlantic City, that he had been a resident of Pittsburgh, and the claimant never came to Pittsburgh, or took any steps to have any one else search around Pittsburgh for the said Zeigler. Further, in other particulars, the conduct of the claimant was wholly inconsistent with that of a man who had been robbed of $25,000 worth of property.

On November 3, 1920, the Hayner Distilling Company caused to be shipped by express at Troy, Ohio, 1,000 cases of whisky in Lehigh Valley car No. 518. The agent of the express company at Troy, Ohio, checked the packages and they were in proper form with the name of the shipper, the serial number, and the name of the consignee, Julius B. Press, marked on each case. On the evening of the 5th of November, 1920, said car arrived at Atlantic City, the place to which it was consigned. On the morning of the 6th the claimant, with Zeigler, appeared at the office of the express company and the claimant paid a large amount of expressage. He testified that he told Zeigler to unload the whisky, place it in his storehouse, and give the keys to his wife, and thereupon soon after the claimant took the train for Newark and New York. That he told Zeigler something to that effect was corroborated by an employee of the express company, who overheard the conversation. It appears, from the evidence of the employees of the express company, that deliveries by the express company of consignments such as that in said car were made at night, after the light business of the day had ceased. There was no delivery made of the contents of that car to claimant's warehouse that night, or at any other time. On the 7th of November, 1920, said car with its contents was reconsigned by a man purporting to have the name of James Baker, who paid the expressage thereon, to the said Philip Logomaresia, at Glenshaw, Pa. The said Baker was accompanied by the said confidential clerk, Zeigler, and there was as well with them on the platform three men, more or less intimately associated with the claimant. They were Reuben Lippman, Fred Chase, and Samuel Press, the latter the son of the claimant. Sam Press and Chase had re-marked the shipments. By re-marking the shipments, as found to be a fact in accordance with the testimony of W. D. Adams, a witness called for the claimant, must be meant the obliteration of the serial numbers and other marks on the cases of whisky in said car, for the most, if not all, of the cases found in said car by the prohibition agents at Glenshaw had such marks obliterated.

It is unnecessary to comment upon the precise relationship of either of these three men named, other than Baker and Zeigler; but it is important to note that Sam Press, the son of the claimant, was present just before the car moved out and was engaged in re-marking the ship-

ment. Sam Press was not called by the claimant as a witness in his behalf. While the final hearing in this matter did not take place until Friday, March 11, 1921, the depositions taken by and on behalf of the claimant, were taken on the 20th day of January, 1921, at Atlantic City, and on the date last mentioned the claimant must have learned from the testimony of an employee of the express company that his son and Lippman had visited the car together.

[2] Furthermore, so far as appears, there were 1,000 cases in that car when it was originally shipped from Troy, Ohio; but when it was seized at Glenshaw, so far as the record shows, there were but 800 cases. The claimant had it in his power to have the testimony of his son taken, if not the testimony of Lippman, Chase, or Zeigler, who, the claimant says, have disappeared. He has not produced the testimony of his son, either by deposition or in person, and it is fair to assume that, because he did not do so, the testimony of the son, if truthful, would not support the claimant's case, or that the father would not impose upon his son a temptation to commit perjury. There can be no comment made upon the failure of the government to have any of the persons named produced. Lippman, Chase, and Zeigler were not where they could be found, and the government could not safely compel Sam Press to testify in the case.

The claimant testified that he learned of the missing whisky on the afternoon or evening of the 9th of November, upon his return from Newark, and that before his return to Atlantic City he had read in the newspaper of the seizure of the whisky at Glenshaw. His conduct was more directed towards straightening out the matters with the prohibition officers, so that the whisky could be returned to him, than it was towards seeking punishment and getting restitution from those who had, as he says, robbed him of $25,000 worth of property.

From what has been found as facts, as hereinbefore set forth, and from the inferences lawfully to be drawn from the testimony, the plaintiff has not sustained his claim, and therefore an order may be presented, denying to him the return of the liquor, and directing the sale thereof by the marshal.